Filed 6/27/14  Certified for publication 7/23/14 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>MARVIN ESTUARDO CATALAN,<br><br>    Defendant and Appellant. | G048746<br><br>(Super. Ct. No. 12HF0430)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Christopher Evans, Temporary Judge.  (Pursuant to Cal. Const., art. VI, § 21.)  Affirmed.

Dacia A. Burz, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Barry Carlton and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

Marvin Estuardo Catalan pleaded guilty to four felonies, including grand theft (Pen. Code, § 487, subd. (a); all statutory references are to the Penal Code unless noted), identity theft (§ 530.5, subd. (a)), and two counts of forgery (§ 470, subd. (d)). The court imposed a four-year hybrid or split sentence (§ 1170, subd. (h)) comprised of a one-year, four-month jail term followed by two years and eight months of mandatory supervision on specified terms and conditions. After Catalan violated the terms of his mandatory supervision, the trial court revoked and reinstated his supervision and added 550 days to his jail sentence. Catalan contends the court abused its discretion by imposing a sentence exceeding the recommended term under the Criminal Justice Realignment Act of 2011 (Realignment Act), operative October 1, 2011. (Stats. 2011, 1st Ex. Sess. 2011–2012, ch. 12, § 1; see, e.g., § 1230, subd. (b)(3).) For the reasons expressed below, we affirm.

I

FACTS AND PROCEDURAL BACKGROUND

In April 2012, Catalan pleaded guilty to four felonies, including grand theft, identity theft, and forgery. The prosecutor agreed to dismiss 15 similar counts involving additional victims. Catalan provided the following factual basis for his plea: "[O]n or between [April 10, 2011 and August 28, 2011], I unlawfully took money [and] personal property of Giovanni G. which had a value exceeding ($950). I also did willfully [and] unlawfully obtain personal identifying [information] of Giovanni G. [and] did unlawfully use that information for an unlawful purpose, specifically to obtain currency, without the consent of Giovanni G. I also with the intent to defraud, did unlawfully [and] falsely make, alter, forge, pass, or attempt to pass, as true [and] genuine, a check #182 [for] $825, knowing it was false, altered, forged, [and] counterfeit [and] did the same [with]

2

check #183 as well. All victims to my offenses include, Giovanni G., Motoaki S.[,] Juvenal C., Coral O. [and] Janet J., of whom I agree to be responsible for restitution to all said victims, despite the remaining counts being dismissed . . . ."

The guilty plea form advised Catalan he faced a maximum term of five years in custody, but the court would impose a four-year hybrid or split sentence (§ 1170, subd. (h)), including one year and four months in custody, followed by two years and eight months of mandatory supervision on various terms and conditions. The court ordered him not to "possess any blank checks, write any portion of any checks, have any checking account, nor use or possess any credit cards or open credit accounts, unless approved in advance by your probation or mandatory supervision officer." Catalan agreed he would "be on mandatory supervision (P.C. 1170(h)(5)[]) for the period of time and subject to the terms and conditions specified in this plea agreement. I understand if I violate any term or condition of mandatory supervision I could be sent to county jail for the remainder of my sentence as set forth on page 6, less any credit for time served." He also agreed to waive his right to appeal from "any legally authorized sentence that the court imposes which is within the terms and limits of this plea agreement."

In April 2013, the probation department filed a petition alleging Catalan had violated the terms of his supervision by opening "three checking accounts without prior permission" of his probation officer. According to the petition, Catalan admitted he "'made a big mistake'" and also had written a "check for $500.00 from one account to another knowing he did not have sufficient funds."

At the violation hearing in May 2013, Catalan testified the probation officer had authorized him to open one checking account so he could direct deposit his

3

paychecks. The probation officer testified he authorized a bank account, but not a checking account, and Catalan "was to have no checks . . . ."

The court found Catalan violated the terms of his supervision. The prosecution argued Catalan should receive 783 days in custody, the balance of his supervision time. Catalan's lawyer argued "to do anything [] other than give him 90 to 120 days" for his first violation would violate the Realignment Act. The court revoked and reinstated supervision and ordered Catalan to serve 730 days in custody with actual and conduct credits of 92 days.

In late June 2013, Catalan moved for recall and reconsideration of the sentence (§ 1170, subd. (d)) based on his remorse and plans to complete beauty school and pay off his student loans. He also asserted the 730-day term imposed for a first violation did not "give effect to the Legislature's intent and its express commands," and "would be counterproductive by thwarting his efforts to reintegrate into society" because "he will default on his student loan and not be able to use it for future schooling, he will lose his stable residence, he will likely face immigration consequences for this long period of incarceration, and he will not be employed (as he has been in the past) to make" probation and restitution payments.

At a hearing in July 2013, the court reduced the additional custody time by 180 days, to 550 days, over the prosecutor's objection. Catalan's lawyer objected that a 550-day term remained excessive for a first violation in a mandatory supervision case. The court awarded Catalan credits of 202 days.

DISCUSSION

Catalan contends the court abused its discretion by imposing a 550-day term for his first violation of mandatory supervision. He asserts the sentence does "not reflect an intermediate sanction of up to [90] days as recommended by the applicable statute [(§ 1230, subd. (b)(3)]," "was not reflective of the objective [and] intent of the Legislature" expressed in section 17.5, and "exceeded the implicitly maximum custody sanction of 180 days for felony probationers" under section 3455, subdivision (d).

As noted above, Catalan agreed he would "be on mandatory supervision (P.C. 1170(h)(5)[]) for the period of time and subject to the terms and conditions specified in this plea agreement. I understand if I violate any term or condition of mandatory supervision I could be sent to county jail for the remainder of my sentence as set forth on page 6, less any credit for time served." He also agreed to waive his right to appeal from "any legally authorized sentence that the court imposes which is within the terms and limits of this plea agreement." The court's 550-day sentence for violating mandatory supervision did not breach Catalan's plea agreement and Catalan does not complain the court imposed an unauthorized sentence, but rests his claim solely on an abuse of discretion. Because Catalan waived his right to appeal any authorized sentence falling within the limits of his plea agreement, he arguably may not maintain this appeal. We turn to the merits, however, because the Attorney General does not raise the issue of waiver. (See *People v. Castrillon* (1991) 227 Cal.App.3d 718.)

We conclude the court did not abuse its discretion. The Realignment Act became effective on October 1, 2011. Under the Realignment Act, qualified persons convicted of nonserious and nonviolent felonies are sentenced to county jail instead of

5

state prison.  (*People v. Scott* (2014) 58 Cal.4th 1415, 1418.)  Trial courts have discretion to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision. (*Ibid.*; *People v. Cruz* (2012) 207 Cal.App.4th 664; § 1170, subd. (h)(5)(B).)

Section 1170, subdivision (h)(5)(B)(i) provides the court may "suspend execution of a concluding portion of the term selected in the court's discretion, during which time the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court.  The period of supervision shall be mandatory, and may not be earlier terminated except by court order.  Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3."

Section 1203.2, subdivision (a) provides in relevant part that at any time during the period of supervision "the court may revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of his or her supervision, has become abandoned to improper associates or a vicious life, or has subsequently committed other offenses, regardless whether he or she has been prosecuted for such offenses."  (See § 1203.2, subd. (b)(1) ["Upon its own motion or upon the petition of the supervised person, the probation or parole officer, or the district attorney, the court may modify, revoke, or terminate supervision of the person" after notice and review of written report from the

6

probation officer on grounds set forth in subdivision (a) if the interests of justice so require].)

Section 1203.3 provides, "The court shall . . . have the authority at any time during the term of mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170 to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term. [¶] (b) The exercise of the court's authority in subdivision (a) to revoke, modify, or change . . . mandatory supervision, or to terminate probation, is subject to the following: [¶] (1) Before any sentence or term or condition of probation or condition of mandatory supervision is modified, a hearing shall be held in open court before the judge. . . ."

Catalan agrees sections 1203.2 and 1203.3 give the trial court the authority to modify or revoke conditions of mandatory supervision. He also agrees the court enjoys broad discretion in matters involving probation and sentencing, and the defendant bears the burden of proof when alleging an abuse of discretion. (*People v. Stuckey* (2009) 175 Cal.App.4th 898, 916 [trial court has broad discretion to determine what the interests of justice require in a particular situation]; *People v. Aubrey* (1998) 65 Cal.App.4th 279, 282; *People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125 [trial court's exercise of discretion will not be disturbed on appeal except on a showing the court exercised discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice].) But Catalan argues the trial court did not "fully appreciate[] that its objective under the [Realignment Act] was to promote and foster 'evidence based programs' and 'community based correction' punishment, including emphasizing intermediate sanctions so as to increase the public safety by

7

achieving reduced recidivism through rehabilitation rather than resorting to more incarceration . . . ."

Catalan cites section 17.5. That section, added by the Realignment Act, contains legislative findings concerning recidivism. The Legislature found reincarceration rates for people released from prison had remained unchanged or worsened, and criminal justice policies based on building and operating more prisons do not result in improved public safety. The Legislature also declared California must reinvest its criminal justice resources to support community-based corrections programs and evidence-based practices, and sentencing low-level felony offenders to locally run community-based corrections programs with community-based punishment and evidence-based practices will improve public safety outcomes and facilitate the felon's reintegration back into society.

Section 17.5 defines "'community-based punishment'" as "correctional sanctions and programming encompassing a range of custodial and noncustodial responses to criminal or noncompliant offender activity," including, but are not limited to, short-term flash incarceration in jail for a period of not more than 10 days, intensive community supervision, home detention with electronic or GPS monitoring, mandatory community service, restorative justice programs (e.g., mandatory victim restitution and victim-offender reconciliation), work, training, or education in a furlough or work release program, day reporting, substance abuse treatment and random drug testing, community-based residential programs offering structure, supervision, drug treatment, alcohol treatment, literacy programming, employment counseling, psychological counseling, mental health treatment, or any combination of these and other interventions. The section also defines "'[e]vidence-based practices'" as "supervision policies, procedures,

8

programs, and practices demonstrated by scientific research to reduce recidivism among individuals under probation, parole, or post release supervision."

Section 17.5 describes the goals and purposes of realignment. It does not contain any specific limits on the trial court's authority to modify a sentence following the violation of a mandatory supervision term.

With these broad purposes in mind, Catalan argues the court abused its discretion "because its sentence did not reflect an intermediate sanction of up to [90] days as recommended by the applicable statute in section 1230, subdivision (b)(3) for felony probationers violations for [*sic*] mandatory supervision." Section 1230, subdivision (a) authorizes counties to establish a Community Corrections Performance Incentives Fund (CCPIF) "to receive all amounts allocated to that county for purposes of implementing this chapter." Subdivision (b) of the section provides, "Notwithstanding any other law, in any fiscal year for which a county receives moneys to be expended for the implementation of this chapter, the moneys, including any interest, shall be made available to the [chief probation officer] of that county, within 30 days of the deposit of those moneys into the fund, for the implementation of the community corrections program authorized by this chapter." Subdivision (b)(3) further provides: "Funds allocated to probation pursuant to this act shall be used to provide supervision and rehabilitative services for adult felony offenders subject to local supervision, and shall be spent on evidence-based community corrections practices and programs, as defined in subdivision (d) of Section 1229 [evidence-based practices include supervision policies, procedures, programs, and practices demonstrated by scientific research to reduce recidivism among individuals under local supervision], which may include, but are not limited to, the following: [¶] . . . [¶] (B) *Implementing and expanding intermediate*

9

*sanctions that include*, but are not limited to, electronic monitoring, mandatory community service, home detention, day reporting, restorative justice programs, work furlough programs, and *incarceration in county jail for up to 90 days*." (Italics added.)

The court placed Catalan under local supervision. (§ 1229, subd. (e) ["'Local supervision' means the supervision of an adult felony offender on probation, *mandatory supervision*, or postrelease community supervision"].) Section 1230, subdivision (b), however deals primarily with felony *probationers* who violate the terms of their probation, not persons like Catalan who are serving a felony hybrid or split sentence and violate terms of their mandatory supervision. In any event, section 1230 concerns how funds should be spent, but it does not constrict or limit a court's discretion in modifying a hybrid sentence after a defendant violates a mandatory supervision term. It is apparent the Legislature under sections 1229 and 1230 did not intend to mandate intermediate sanctions for persons who violate conditions of their mandatory supervision and limit periods of incarceration up to 90 days.

Catalan also argues the court abused its discretion because the "sentence of 550 days exceeded the implicitly maximum custody sanction of 180 days for felony probationers. (e.g. [§] 3455, subd. (d).)" Section 3455 is part of the Postrelease Community Supervision Act of 2011. (See § 3450 et seq.) Section 3451 specifies that low-level offenders serving a prison term who are released from prison on and after October 1, 2011, "shall, upon release from prison and for a period not exceeding three years immediately following release, be subject to community supervision provided by a county agency designated by each county's board of supervisors which is consistent with evidence-based practices, including, but not limited to, supervision policies, procedures,

10

programs, and practices demonstrated by scientific research to reduce recidivism among individuals under postrelease supervision."

Section 3455 provides that where "the supervising county agency has determined, following application of its assessment processes, that intermediate sanctions as authorized in subdivision (b) of Section 3454 [including flash incarceration in a city or county jail] are not appropriate, the supervising county agency shall petition the court pursuant to Section 1203.2 to revoke, modify, or terminate postrelease community supervision." Where the court finds "the person has violated the conditions of postrelease community supervision, the revocation hearing officer shall have authority to do all of the following: [¶] (1) Return the person to postrelease community supervision with modifications of conditions, if appropriate, including a period of incarceration in county jail. [¶] (2) Revoke and terminate postrelease community supervision and order the person to confinement in the county jail. [¶] (3) Refer the person to a reentry court pursuant to Section 3015 or other evidence-based program in the court's discretion." (§ 3455, subd. (a).) Subdivision (d) of section 3455 provides "Confinement pursuant to paragraphs (1) and (2) of subdivision (a) shall not exceed a period of 180 days in the county jail for each custodial sanction."

Catalan argues section 3455 reflects "the Legislature's intent that low-level felons who violate conditions of their supervised released must be sanctioned with incremental severity." But section 3455 applies to persons who have been released from prison after serving their sentences. It does not apply to persons such as Catalan who are currently serving a hybrid sentence. We disagree section 3455 constrains a trial court from adding more than 180 days to the custody component of a hybrid sentence following a violation of mandatory supervision.

11

Here, under the plea agreement, the trial court sentenced Catalan to a hybrid sentence consisting of county jail followed by a period of mandatory supervision. Catalan agreed if he violated "any term or condition of mandatory supervision" he "could be sent to county jail for the remainder of" his sentence. Catalan thereafter violated the terms of his mandatory supervision, and the court exercised its discretion to lift, in part, its suspension of Catalan's sentence. The record reflects Catalan had a history of using bad checks to defraud others and was engaging in that behavior again not long after being released from custody. The court considered Catalan's mitigating evidence and sentenced Catalan to less time in custody than it could have under the plea agreement. We have concluded the statutory provisions relied on by Catalan are inapposite. We have not found any other authority suggesting the modification of Catalan's sentence was an abuse of discretion.

III

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


MOORE, ACTING P. J.


FYBEL, J.

12

Filed 7/23/14

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>  v.<br><br>MARVIN EDUARDO CATALAN,<br><br>  Defendant and Appellant. | G048746<br><br>(Super. Ct. No. 12HF0430)<br><br>ORDER GRANTING REQUEST<br>FOR PUBLICATION |

Pursuant to California Rules of Court, rule 8.1105(c), and for good cause shown, plaintiff and respondent's request to publish the opinion filed on June 27, 2014 is GRANTED. The entire opinion is ordered published in the Official Reports. (Cal. Rules of Court, rule 8.1105(b).).

ARONSON, ACTING P. J.

WE CONCUR:


MOORE, J.


FYBEL, J.