Filed 12/17/20  P. v. Solomon CA1/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>LARRY SOLOMON,<br><br>        Defendant and Appellant. | No. A157599<br><br>(Solano County Super.<br> Ct. No. FCR335714) |

Defendant Larry Solomon's appellate counsel requests this court independently review the record under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*).  Solomon's counsel informed him of his right to file a supplemental brief, and he has not filed one.  Upon our independent review of the record under *Wende*, we conclude there are no arguable appellate issues requiring further briefing and affirm.

### BACKGROUND

In 2018, Solomon pleaded no contest to one count of second degree burglary, a felony (Pen. Code, § 459), and one count of false imprisonment, a misdemeanor (*id.,* § 236), and the Solano County Superior Court found him guilty of these charges.  His convictions stemmed from criminal conduct at a store in Fairfield, California.

The court sentenced Solomon to a three-year term in county jail for the second degree burglary (the court imposed a concurrent term for the false

1

imprisonment conviction), with his final year to be suspended and Solomon to be placed on mandatory supervision as managed by the probation department under Penal Code section 1179, subdivision (h)(5)(B). It awarded him 257 days of custody and conduct credits. The court ordered that during his mandatory supervision, Solomon would be required to successfully complete counseling and therapy as directed by his probation officer.

Solomon's appeal follows the court's revocation of his mandatory supervision after finding that Solomon failed on multiple occasions to report to the probation department as required under the terms of his mandatory supervision.

In February 2019, the superior court temporarily revoked Solomon's mandatory supervision and issued a bench warrant for his arrest upon the written recommendation of a senior deputy probation officer after Solomon allegedly failed to report to the department on February 13, 2019, as required. The court conducted a revocation hearing, at which Solomon admitted to this failure to report violation. The court ordered him to serve 30 days in custody, awarded him 24 days of custody credits and reinstated his mandatory supervision under the same terms and conditions as before.

In April 2019, Solomon was arrested for possession of a controlled substance, and the district attorney's office requested that the court schedule a hearing to consider revocation of his mandatory supervision, stating that it was pursuing revocation in lieu of filing a new complaint. A contested revocation hearing followed. At the hearing, a probation officer testified that Solomon failed to report to the department as required on March 29, 2019, and on April 29, 2019. On cross-examination, the officer testified that Solomon told her at a March 18, 2019 meeting that he was homeless and in need of housing, and that she would have referred him to housing resources if

he had reported to the department as required on March 29, 2019, when an orientation would have occurred. She further testified that Solomon did not have a cell phone, a car or a bicycle but did not indicate he was in need of services at their March 18, 2019 meeting. At the conclusion of that meeting, he was provided with food and an appointment slip for his March 29, 2019 meeting, when other services would have been provided to him.

In closing argument, Solomon's counsel contended that Solomon had reported to the department for one mandatory supervision meeting and appeared to be "trying," but had been hampered by his homelessness, lack of a phone and lack of transportation at a time when services had not been offered to him. The prosecution argued Solomon's violations should not be excused by his lack of resources. It contended that Solomon had not indicated he had difficulty reporting to the department for his mandatory supervision meetings, yet had twice failed to report, including after the court had expressly ordered him to report. Further, he had made no attempt to contact probation prior to the hearing.

The court found that Solomon understood he was required to attend his March 29, 2019, and April 29, 2019 mandatory supervision meetings and did not. The court understood that Solomon lacked certain resources, but found that, "nonetheless, [he] was ordered to report and he failed to do so." It ruled that Solomon had violated his mandatory supervision and asked the probation department for a recommendation. The probation officer present at the hearing recommended that the court impose the remainder of Solomon's three-year sentence, and the prosecution agreed. The court noted that this was Solomon's second mandatory supervision violation (apparently referring to his failure to report for a mandatory supervision meeting on February 13, 2019) but that he had not committed any new offenses. The prosecution

3

indicated that it had information that Solomon had been in possession of methamphetamine and had not enrolled in his required programming. Defense counsel objected to the court's consideration of this information as outside the scope of what was presented in the hearing and because the defense had not received any information on the allegation, such as lab results. Defense counsel asked that the court sentence Solomon to credit for time served because his violations were "technical" in nature and just "for failure to maintain contact."

The court stated that, if the defense agreed to imposition of sentence at the hearing, "the sanction would be 60 days in the county jail. And I would just indicate to you that the reason for that is I do understand what you are saying that he was not provided [a] phone or assistance with obtaining homeless housing and transportation. But based on the officer's testimony, it appears that Probation was not given that opportunity to provide, if you will, because the defendant failed to appear at probation—at this appointment that was scheduled in order for Probation to start those services for him. [¶] So if he doesn't appear—if he doesn't report to Probation, then there's no way that Probation can offer those services to him and he's going to be coming back for further violations. But if he does report to Probation and do what Probation asks him to do, then maybe his—then Probation will have an opportunity to provide services that they have for probationers like Mr. Solomon."

Defense counsel stated that Solomon was prepared to be sentenced that day. The court then ordered that Solomon's mandatory supervision was revoked and reinstated under the same terms and conditions as previously imposed, except that Solomon was ordered to serve 60 days in county jail. The court awarded him a total of 32 days of custody and conduct credits and ordered him to report to the probation department within 48 hours of his

4

release from county jail.

Solomon filed a timely appeal from the court's orders at the revocation hearing.

**DISCUSSION**

We have independently reviewed the record under *Wende* and conclude there are no arguable appellate issues regarding the mandatory supervision rulings appealed from that require further briefing.

The trial court acted under the discretion afforded to trial courts "to commit the defendant to county jail for a full term in custody, or to impose a hybrid or split sentence consisting of county jail followed by a period of mandatory supervision." (*People v. Catalan* (2014) 228 Cal.App.4th 173, 178.) The court placed Solomon on mandatory supervision under Penal Code section 1170, subdivision (h)(5)(B), which states in relevant part: "During the period of mandatory supervision, the defendant shall be supervised by the county probation officer in accordance with the terms, conditions, and procedures generally applicable to persons placed on probation, for the remaining unserved portion of the sentence imposed by the court. The period of supervision shall be mandatory, and may not be earlier terminated except by court order. Any proceeding to revoke or modify mandatory supervision under this subparagraph shall be conducted pursuant to either subdivisions (a) and (b) of Section 1203.2 or Section 1203.3."

Penal Code section 1203.2, subdivision (a) provides in relevant part that at any time during the period of supervision the court may, upon rearrest of the person or issuance of a warrant for rearrest, "revoke and terminate the supervision of the person if the interests of justice so require and the court, in its judgment, has reason to believe from the report of the probation or parole officer or otherwise that the person has violated any of the conditions of their

supervision . . . ." Further, the court may modify or revoke supervision for a person upon petition from, among others, a probation officer or the district attorney upon proper notice being given. (Pen. Code, §1203.2, subd. (b)(1).) "Upon any revocation and termination of probation the court may, if the sentence has been suspended, pronounce judgment for any time within the longest period for which the person might have been sentenced." (*Id.,* §1203.2, subd. (c).)[1]

"A trial court may revoke mandatory supervision when it has reason to believe the person under supervision has committed another offense or otherwise has violated the terms of supervision. (Pen. Code, § 1203.2, subd. (a).) The prosecution must prove the grounds for revocation by a preponderance of the evidence. (*People v. Rodriguez* (1990) 51 Cal.3d 437, 447.) We consider 'whether, upon review of the entire record, there is substantial evidence of solid value, contradicted or uncontradicted, which will support the trial court's decision.' (*People v. Kurey* (2001) 88 Cal.App.4th 840, 848.) Substantial evidence is evidence that is reasonable, credible, and of solid value. (*Minnegren v. Nozar* (2016) 4 Cal.App.5th 500, 507.) We 'give great deference to the trial court and resolve all inferences and intendments in favor of the judgment. Similarly, all conflicting evidence will be resolved in favor of the decision.' (*People v. Kurey*, at pp. 848-849.)" (*People v. Buell* (2017) 16 Cal.App.5th 682, 687.)

---

[1] Section 1203.3, subdivision (a), which similarly provides that "[t]he court . . . has the authority at any time during the term of mandatory supervision pursuant to subparagraph (B) of paragraph (5) of subdivision (h) of Section 1170 to revoke, modify, or change the conditions of the court's order suspending the execution of the concluding portion of the supervised person's term," applies to court orders that do not follow rearrest. (*People v. Howard* (1997) 16 Cal.4th 1081, 1094 [regarding previous, similar versions of sections 1203.2 and 1203.3]; see Stats. 1989, ch. 1319, § 1 [re §1203.2] and Stats. 1995, ch. 313, § 9 [re § 1203.3].)

Here, we see no arguable appellate issues regarding the rulings appealed from, which were supported by substantial evidence that Solomon violated the terms of his mandatory supervision by his failures to report to the probation department as required and which were authorized by law.

## DISPOSITION

The rulings appealed from are affirmed.

_____

STEWART, J.

We concur.

_____

KLINE, P.J.

_____

RICHMAN, J.

*People v. Solomon* (A157599)

8