Filed 9/26/24  P. v. Gadson CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FOURTH APPELLATE DISTRICT

### DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G062768 |
| v. | (Super. Ct. No. FMB22000236) |
| WOLFGANG OLIVER GADSON, JR., | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of San Bernardino County, Rodney A. Cortez, Judge. Affirmed as modified and remanded with directions.

Cynthia M. Jones, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Arlene A. Sevidal and Andrew Mestman, Deputy Attorneys General, for Plaintiff and Respondent.

\* \* \*

A jury convicted Gadson of 10 counts of oral copulation with a child under 10 years of age (Pen. Code, § 288.7, subd. (b);[1] counts 1–10), and two counts of lewd acts with a child under age 14 (§ 288, subd. (a); counts 11 & 12). The information also alleged 10 circumstances in aggravation, pursuant to section 1170, subdivision (b)(2).

The prosecution alleged two of the incidents of oral copulation, charged as counts 1 and 10, occurred on separate occasions in the garage of Gadson's home on Breezy Lane. Gadson argues the evidence was insufficient to support his conviction on count 10. We disagree and conclude there was substantial evidence to support the jury's finding of guilt on that count.[2]

Gadson also argues the trial court abused its discretion by imposing the upper term on count 12. We find no abuse of discretion by the trial court.

Gadson further argues, and the Attorney General agrees, at the time of sentencing, the trial court erred in awarding pre-sentence custody credits. We therefore modify the judgment to correct this error and award

---

[1] All undesignated statutory references are to this code.

[2] Because we conclude Gadson's conviction of count 10 was supported by substantial evidence, we decline to address his alternative argument that, even if count 10 could be based on an unspecified act which occurred in the garage of the family's former home on Keats Avenue, such evidence was insufficient.

Gadson 1,161 days of actual custody credit and 174 days of conduct credit, for a total of 1,335 days of credit. We affirm the judgment as so modified, and remand for the trial court to prepare amended abstracts of judgment.

FACTUAL AND PROCEDURAL HISTORY[3]

In 2016, Gadson's then four-year-old daughter, Jane Doe, asked her mother (Mother), "'what is the white stuff that comes out of daddy?'" When Mother asked Jane Doe for more details, Jane Doe said something about "itching" Gadson, and that his white stuff was in her mouth and she would spit it out.

When Mother confronted Gadson, he admitted Jane Doe caught him masturbating and he invited her to help him. He also told Mother he had been sexually abused by his father as a child. Gadson apologized and promised it would not happen again. Mother believed Gadson and did not report his sexual abuse of Jane Doe at that time.

In August 2019, Jane Doe, who was then seven years old, and her younger brother witnessed Mother giving Gadson oral sex in their bedroom. Jane Doe told Mother she was jealous of Mother because that was what Jane Doe did for Gadson. When questioned by Mother, Jane Doe told Mother that had happened multiple times when she was between the ages of four and seven years old. Mother again confronted Gadson; he initially stated Jane Doe was lying, but then admitted Jane Doe was telling the truth and he was sick. Mother called 9-1-1 to report Gadson, telling the dispatcher about the molestation incidents in 2016 and 2019.

---

[3] Our factual and procedural history is limited to provide context relevant to the issues presented in this appeal.

I.

THE CHARGED COUNTS AND EVIDENCE AS TO COUNT 10

Gadson was charged in an information with ten counts of oral copulation with a child 10 years old or younger (§ 288.7, subd. (b); counts 1–10), and two counts of committing a lewd act upon a child under the age of 14 (§ 288, subd. (a); counts 11 & 12). At the time of trial, the prosecution elected the facts supporting each of the twelve counts, rather than providing the jury with generic testimony and an instruction requiring unanimity. (See e.g., *People v. Archer* (1989) 215 Cal.App.3d 197, 202–203.)

Relevant to this appeal, count 10 alleged Jane Doe orally copulated Gadson in the Breezy Lane Garage. This allegation was identified as "Breezy Lane Garage #2" in the jury verdict forms for count 10 and was argued by the prosecution as the second occurrence of oral copulation by Jane Doe in the garage at the Breezy Lane home. (Some capitalization and boldface omitted.) The other alleged incident of oral copulation by Jane Doe in the garage at the Breezy Lane home, alleged in count 1 of the information, was identified as "Breezy Lane Garage #1" in the jury verdict forms. (Some capitalization and boldface omitted.)

At trial, the jury heard testimony from Jane Doe and Mother. Recordings of Mother's 9-1-1 call in August 2019, Mother's and Gadson's statements to police, and Jane Doe's initial statement to police and forensic interview, were also played for the jury.

*A. Mother's Statements to Law Enforcement*

In her initial interview with a sheriff's deputy in response to her 9-1-1 call in August 2019, Mother stated Jane Doe told her she orally copulated Gadson in the Breezy Lane garage while Mother was in the house drinking coffee. According to Jane Doe, on that occasion, Gadson sent her

4

brother to the shed to find toys to keep him away from the garage. Mother stated she remembered a time when she was drinking coffee and Gadson sent their son to the shed to retrieve toys. When asked how long ago this occurred, Mother estimated that it was "[m]aybe two or three months ago."

Later in the same interview, Mother stated Jane Doe "told [her] about the two incidents in the garage." Mother did not specify whether both of these "two incidents" occurred at the garage on Breezy Lane or whether they involved oral copulation. When asked about which incidents occurred at their prior home on Keats Avenue,[4] Mother said Jane Doe told her "it"[5] happened in the parents' bedroom, Jane Doe's room, the living room, and the garage. Mother stated, "[Jane Doe] told [her] that it happened once in the garage at Keats."

During a follow up interview approximately two weeks later, Mother again said Jane Doe told her, "It happened twice in the garage." However, Mother did not specify whether both incidents were in the garage at Breezy Lane or whether one occurred at Keats Avenue.

*B. Jane Doe's Statements to Law Enforcement, Statements to a Forensic Interviewer, and Trial Testimony*

Jane Doe was initially interviewed by a responding sheriff's deputy and later by a forensic interviewer at the local Children's Assessment

---

[4] Jane Doe and her family lived in two different residences which were used at trial to identify the allegations in each count. The first residence was on Keats Avenue and the second on Breezy Lane.

[5] Jane Doe called what happened during these incidents "itching" and "itching him," but at the time Mother stated she did not know what that meant.

Center (CAC). In her initial interview with the sheriff's deputy, she said she would "itch" Gadson.[6] She indicated she has done this probably 20 times. She reported this happening in the kitchen, the living room, and "probably" her bedroom. She said one time it happened while they were in the living room of their house on Keats Avenue. Jane Doe also told the deputy Gadson had orally copulated her in her brother's bedroom.

In Jane Doe's interview at the CAC, she described rubbing Gadson's penis in her parents' bedroom closet, and orally copulating Gadson in a car parked in the driveway and in the kitchen at their Keats Avenue home. When asked about a time she remembered the most, Jane Doe responded, "[t]hat was in the closet. I think – oh, and I remember at Keats, it was in the garage!"[7] She said it's happened in her room, in the garage, and in her parent's room at the Breezy Lane home. She also reported one time Gadson put honey on his "[p]rivate" so she "would want to do it." Jane Doe said Gadson placed his mouth on her vagina in her brother's room. On one occasion, she recalled being in the garage and she thinks Gadson "tricked [her] brother to go into the shed and get him some toys."

At the time of Gadson's trial, Jane Doe was in the fifth grade. During direct examination, the prosecutor asked Jane Doe, "where at the house on Breezy [Lane] did the inappropriate touching take place for that last time?" Jane Doe replied, "Um, well, there was a couple of times." She then elaborated, "So one of the times was in the garage. Another one of the

---

[6] By "itch," Doe described her orally copulating and masturbating Gadson.

[7] The forensic interviewer did not ask any follow-up questions regarding this latter incident.

6

times was in the bathroom. And another one of those times we were in my room. And another one of those times we were in my brother's room. And another one of those times we were in the garage and in the living room. And I think it might have been in the kitchen too."

The prosecutor then asked Jane Doe whether the touching in the Breezy Lane garage involved oral copulation; Jane Doe answered in the affirmative. Later, the prosecutor asked, "I think I heard you say 'garage' two times. So I want to make sure I don't get anything wrong. [¶] Were there two times that the inappropriate thing happened in the garage?" Jane Doe replied, "Once." The prosecutor inquired again, "Just once?" and Jane Doe nodded affirmatively. The prosecutor asked if the garage incident at Breezy Lane was when Jane Doe's "dad had, um, sent [her brother] out to get some dog toys?" Jane Doe replied, "Yes." When asked if there was an incident of oral copulation which occurred in the garage at Keats Avenue, Jane Doe stated, "That wasn't in the garage at Keats. That was the garage on Breezy Lane."

*C. Gadson's Police Interviews*

When sheriff's deputies arrived at Gadson's home on Breezy Lane in August 2019, Gadson spoke to one of them in his driveway. Gadson told the deputy of an initial incident involving Jane Doe in 2016 at Gadson's home on Keats Avenue. Jane Doe had walked into her bedroom where Gadson was masturbating. When Gadson told Jane Doe he was "itching myself," she asked if she could help. Jane Doe put her hand on Gadson's penis and "rubbed [it] up and down" for a minute before he told her he could finish it

himself. After he "finished, [he] cleaned up and went about [his] business," while Jane Doe laughed and ran out of the room.

Gadson told the deputy another incident occurred in November 2018, when he was masturbating in the garage at the home on Breezy Lane. Jane Doe walked into the garage and "asked to help." Jane Doe asked, "if she could do what mommy was doin[g]" and orally copulated Gadson until he ejaculated into her mouth. Gadson told the deputy he was molested by his father and his father's friend when he was between the ages of four and seven years old. Gadson also told the deputy about an incident the evening before the date of the police interview. He said, prior to the children watching a movie, Jane Doe came into the garage where Gadson was, and Gadson sent his son to the shed to get toys.

At the sheriff's station, Gadson admitted to two incidents, one of which occurred in Jane Doe's bedroom at the Breezy Lane home in 2016 and the other in the garage at the Breezy Lane home in 2018. In this interview, Gadson said he told his son to get toys from the shed during the second incident. Gadson denied any other instances of sexual abuse.

IV.

JURY VERDICT AND SENTENCING

The jury found Gadson guilty on all counts as charged in the information. After Gadson admitted he took advantage of a position of trust or confidence to commit the offenses within the meaning of section 1170, subdivision (b)(2), the remaining aggravating factors alleged in the information were dismissed. The court imposed an indeterminate prison term of 150 years to life by imposing a term of 15 years to life on each of counts 1 through 10. The court also imposed a consecutive determinate prison term of

10 years, by imposing the upper term of eight years on count 11 and a consecutive term of two years on count 12.

## DISCUSSION

## I.

### SUBSTANTIAL EVIDENCE SUPPORTS THE JURY VERDICT OF GUILTY ON COUNT 10

The prosecution alleged two of the 10 counts of oral copulation of a minor, counts 1 and 10, occurred on two separate occasions in the garage of Gadson's home on Breezy Lane. Gadson acknowledges there was legally sufficient evidence to support his conviction of count 1 but contends the evidence was insufficient to support the jury's verdict on count 10.

*A. Standard of Review*

"""""[T]he court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.""""" (*People v. Thompson* (2010) 49 Cal.4th 79, 113.) The standard is the same under the state and federal due process clauses. (*People v. Rowland* (1992) 4 Cal.4th 238, 269.) "We presume "'in support of the judgment the existence of every fact the trier [of fact] could reasonably deduce from the evidence." [Citation.] This standard applies whether direct or circumstantial evidence is involved.'" (*People v. Prince* (2007) 40 Cal.4th 1179, 1251.) We must accept logical inferences the jury might have drawn from that evidence. (*People v. Sanghera* (2006) 139 Cal.App.4th 1567, 1573.) Unless it is clearly shown that "'on no hypothesis whatever is there sufficient substantial evidence to support the verdict,'" the conviction will not be reversed. (*People v. Misa* (2006) 140 Cal.App.4th 837, 842.)

9

*B. Analysis*

Gadson contends there was insufficient evidence adduced at trial to prove two separate acts of oral copulation occurred in the garage on Breezy Lane. We disagree.

The record contains substantial evidence to support the jury's verdict on count 10. A reasonable jury could conclude, from Gadson's statements to police, Mother's trial testimony, and Mother's two separate statements to police, in which she reported Jane Doe told her there were "two garage incidents," that both crimes occurred in the garage at the Breezy Lane home.

Gadson admitted to police Jane Doe orally copulated him in the Breezy Lane garage in November 2018 after Jane Doe walked in on him masturbating. In this same police interview, Gadson told police about an incident the evening of August 3, 2019, when prior to the children watching a movie, Jane Doe came into the garage where Gadson was. During that incident, Gadson sent his son to the shed to get toys.

Mother testified the family moved from Keats Avenue to Breezy Lane in 2016. Mother stated she remembered a time when Gadson had called Jane Doe to the garage and sent their son to the shed to get toys. She said this incident occurred "two or three months" prior to her 9-1-1 call and before their puppies were born on June 3, 2019.

During Mother's first interview and follow-up interview with the deputy sheriff, as well as during her trial testimony, Mother reported Jane Doe told her there were two incidents in the garage. Although Jane Doe testified to only one incident of oral copulation in the Breezy Lane garage when Gadson sent her brother to the shed for toys, there was other evidence

10

from which a reasonable jury could find there were two separate incidents of oral copulation in the Breezy Lane garage.

Moreover, the jury's question to the court during its deliberations regarding the evidence required to find Gadson guilty of count 10 demonstrates it was aware it had to determine whether there was sufficient evidence of two separate incidents of oral copulation in the Breezy Lane garage. The jury inquired: "Charge #10 (Garage #2), happened at Keats, or at Breezy? Evidence reference?" The court responded, "Answer 1A: Refer to the 'possible verdicts' forms as it relates to Count 10. [¶] Answer 1B: Refer to the testimony received during trial and/or exhibits submitted to the jury." Both possible jury verdict forms for count 10 clearly identified the underlying basis for this count as "Breezy Lane Garage #2." (Some capitalization and boldface omitted.) After reviewing the evidence presented at trial, the jury found beyond a reasonable doubt there were two separate instances of oral copulation in the Breezy Lane garage. Such a finding was supported by the substantial evidence discussed *ante*. To the extent Gadson argues count 10 was based on an unspecified incident in the garage of the Keats Avenue home, the express language of the jury's verdict form on count 10 alone dispels that notion.

## II.

### IMPOSITION OF THE UPPER TERM ON COUNT 12

Gadson next argues the trial court abused its discretion by imposing the upper term on count 12 after erroneously rejecting evidence of his childhood trauma and by impermissibly considering Gadson's statement the court did not have jurisdiction over him. For the reasons we explain, we find no abuse of discretion.

11

*A. Factual Background*

Effective January 1, 2022, section 1170 was amended to limit the court's sentencing discretion and to require the imposition of the lower term in certain circumstances. Section 1170 as so amended now provides the court "shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation or sexual violence." (§ 1170, subd. (b)(6).) "[T]his provision establishes a presumption of the lower term if the defendant's [childhood trauma] was 'a contributing factor' in his or her commission of the crime '*unless* the court finds the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice.'" (*People v. Flores* (2022) 73 Cal.App.5th 1032, 1039.) Consequently, the imposition of the upper term is no longer permitted unless there are aggravating circumstances, and "the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).)

In his sentencing brief, Gadson presented several factors in mitigation, including a history of sexual abuse by his father and his father's friend when Gadson was a young child. Gadson alleged his victimization, together with physical violence and other childhood trauma, "was a contributing factor" in his sexual abuse of Jane Doe within the meaning of section 1170, subdivision (b)(6). Gadson's psychological evaluation, which was submitted to the court at his sentencing hearing, indicated Gadson's childhood physical and sexual abuse "appear[ed] to [have] contributed directly" to Gadson's molestation of Jane Doe.

12

The court allowed Gadson to speak at the sentencing hearing. In response, Gadson said the court lacked jurisdiction because the gold fringed flag in the courtroom meant it was a maritime court without jurisdiction over criminal matters. The court replied it would not engage "in a conversation as it relates to [Gadson's] sovereign citizen malarkey."[8] When the court asked whether Gadson had anything further to say, Gadson stated, "No, sir."

In its sentencing determination, the trial court first noted it felt "horrible for Mr. Gadson having suffered through such a traumatic childhood." However, the court stated, "this trial was about what Mr. Gadson subjected his bright, intelligent, and beautiful child to for several years. She will likely suffer long-term psychological effects from those years of Mr. Gadson's cruel and despicable sexual abuse."

The court went on to state: "When a father commits years of sexual abuse against his own child, that child needs the protection that her own father was unable to provide her as he was the one perpetrating the harm upon her. Should this court not impose a harsh and lengthy sentence, Jane Doe would then just be known as the first of more of Mr. Gadson's victims. [¶] For that reason, and based on the 12 felony convictions, Mr. Gadson will not ever be put in a position of harming another child, let alone one of his own."

The court then stated it would not exercise its discretion to grant probation, citing multiple aggravating factors, pursuant to California Rules of

___

[8] The court's use of the word "malarkey" was probably unnecessary. As pointed out in Gadson's opening brief, "[t]he Sovereign Citizen movement is an anti-government movement which has been successful in convincing defendants that courts generally lack jurisdiction for legally frivolous reasons."

Court, rule 4.414,[9] including that the crime involved great violence, great bodily harm, threat of great bodily harm, and acts disclosing a high degree of cruelty, viciousness, and callousness. The court further determined the victim was vulnerable; the manner in which the crime was carried out indicated planning, sophistication, or professionalism; and Gadson took advantage of a position of trust or confidence.

The court also stated it found Gadson's request to find the crimes connected to his childhood trauma "uncompelling" and declined to make such a finding, noting when Gadson addressed the court, he only spoke about his "sovereign citizen beliefs about the court lacking jurisdiction" rather than expressing remorse. Regarding count 11, the court found the aggravated term of eight years appropriate because Gadson admitted he took advantage of a position of trust or confidence to commit the offense.

*B. Standard of Review*

A trial court enjoys broad discretion in matters involving probation and sentencing. (*People v. Catalan* (2014) 228 Cal.App.4th 173, 179.) The party challenging a decision to grant or deny probation bears the burden of establishing the court abused its discretion. (*Ibid.*) "The trial court's sentencing discretion must be exercised in a manner that is not arbitrary and capricious, that is consistent with the letter and spirit of the law, and that is based upon an 'individualized consideration of the offense, the offender, and the public interest.'" (*People v. Sandoval* (2007) 41 Cal.4th

---

[9] "In determining the suitability of the defendant for probation, the court may consider factors in aggravation and mitigation, whether or not the factors have been stipulated to by the defendant or found true beyond a reasonable doubt at trial by a jury or the judge in a court trial." (Cal. Rules of Court, rule 4.414(c).)

14

825, 847.) ""'"In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.""'" (*People v. Lee* (2017) 16 Cal.App.5th 861, 866.)

*C. Analysis*

"[N]othing in section 1170(b)(2) prohibits the court from imposing an upper term sentence based on a single, properly proven aggravating circumstance *if*, in the court's discretion, *that circumstance alone justifies* a sentencing exceeding the middle term." (*People v. Lynch* (2024) 16 Cal.5th 730, 764.) Here, section 1170, subdivision (b)(2)'s requirements justifying the imposition of an upper term sentence were satisfied because Gadson stipulated he took advantage of a position of trust or confidence to commit the offenses. Gadson abused his position of trust as Jane Doe's father by repeatedly molesting her starting when she was four years old. As the court noted at the sentencing hearing, Jane Doe was abused by the person whose duty as a father was to protect her. Thus, the trial court was within its discretion to impose the upper term based solely on this one aggravating circumstance.

### III.

#### PRE-SENTENCE CREDITS

Gadson contends the trial court erred by failing to award him 1,161 days of actual custody credit and 174 days of conduct credit, for a total of 1,335 days of credit. We agree.

Gadson was arrested on August 4, 2019, and sentenced on October 7, 2022. However, the probation report erroneously lists Gadson's arrest date as June 6, 2022. Although the trial court did not orally address Gadson's entitlement to actual and conduct credits at the sentencing hearing,

15

both the indeterminate and determinate abstracts of judgment awarded Gadson a total of only 142 days of credit, consisting of 124 days of actual custody credit and 18 days of conduct credit, presumably based upon the erroneous arrest date.

An incorrect award of presentence custody credits is an unauthorized sentence which may be corrected at any time. (*People v. Gisbert* (2012) 205 Cal.App.4th 277, 282.) The Attorney General concedes Gadson is entitled to presentence credits from the date of his arrest on August 4, 2019, through the day of his sentencing on October 7, 2022. (§ 2900.5, subd. (a); *People v. Kennedy* (2012) 209 Cal.App.4th 385, 394.)

We therefore modify the judgment to reflect the correct award of 1,161 days of actual custody credit and 174 days of conduct credit, for a total of 1,335 days of credit, pursuant to section 2933.1, subdivision (c).

DISPOSITION

The judgment is modified to provide Gadson an award of 1,161 days of actual custody credit and 174 days of conduct credit, for a total of 1,335 days of credit. The trial court is directed to prepare amended indeterminate and determinate abstracts of judgment reflecting the correct presentence credit award and is further directed to forward certified copies of the amended abstracts of judgment to the Department of Corrections and Rehabilitation.

In all other respects, and as so modified, the judgment is affirmed.

MOTOIKE, J.

WE CONCUR:

O'LEARY, P. J.

GOETHALS, J.