Filed 3/28/25  P. v. Carrillogomez CA1/1
NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>NELSON CARRILLOGOMEZ,<br><br>Defendant and Appellant. | A169824<br><br>(Alameda County<br>Super. Ct. No. 17-CR-005333) |

Defendant Nelson Carrillogomez appeals from the trial court's imposition of an indeterminate sentence of 25 years to life consecutive to a determinate term of seven years, after a jury convicted him of attempted murder and found that he personally discharged a firearm causing great bodily injury.  Defendant's appointed appellate counsel filed a brief pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*), identifying no issues and requesting that this court review the record and determine whether any arguable issue exists on appeal.  Having done so, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

On November 3, 2017, the Alameda County District Attorney filed an information alleging that, on February 5, 2017, defendant committed

attempted murder (Pen. Code,[1] §§ 187, subd. (a), 664, subd. (a); count one) and one count of shooting at an occupied motor vehicle (§ 246; count two). In addition, for each count, the district attorney alleged that defendant had personally and intentionally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), personally inflicted great bodily injury (§ 12022.7, subd. (a)), and personally inflicted great bodily injury causing paralysis (*id.*, subd. (b)). Count one further alleged personal use of a firearm (§ 12022.53, subd. (b)), and personal and intentional discharge of a firearm (*id.*, subd. (c)).

The jury trial took place over four days in April 2023. The following was among the evidence adduced at trial:

The victim, Luis F.,[2] emigrated to the United States from Guatemala at age 16. While living in Guatemala, he had dated S.F. for about two years. While they were dating, S.F. lived with Luis's parents. In 2015, S.F. moved to North Hollywood with her mother. Luis and S.F. did not continue dating after S.F. came to the United States but maintained contact with each other.

While S.F. was living in North Hollywood, she met defendant on Facebook. He visited her in Southern California, and they began dating. She moved to Oakland and lived with him. They broke up, and she moved out and began renting a room from Luis's godparents across the street from the home of Luis's best friend, M.R.

Luis did not know that defendant and S.F. were dating when he first met defendant. Luis met defendant in a barber shop, where defendant asked Luis for his phone number to invite him to a party. Luis thought the interaction was weird but gave defendant his phone number, eventually

---

[1] All undesignated statutory references are to the Penal Code.

[2] We refer to the victim in this case by his first name and last initial, and thereafter by first name only. No disrespect is intended.

declining to attend the party when invited. Later, Luis met up with defendant at a Walgreens in Oakland. Defendant commented that he knew why Luis had broken up with S.F. Luis again thought the comments were weird, but there was no conflict during the interaction.

A couple of weeks later, Luis was driving and saw defendant chasing him. Defendant pulled alongside Luis and made a hand gesture simulating a gun. Luis sped up to avoid defendant and kept going until smoke started coming out of defendant's engine as his car broke down. Luis stopped to ask defendant what his problem was, and defendant told Luis he needed to get out of his car and fight. Luis said he would not, that he had no problems with anyone, and drove away.

Defendant later chased Luis in his car a second time, this time armed with a gun. Defendant pulled alongside Luis on San Leandro Avenue in Oakland and Luis saw that he had a gun. Luis called 911 and asked if there was a police officer nearby. While he was on the phone with the dispatcher, Luis saw a police car with its lights on and drove toward it. When Luis contacted the police officer in the patrol car, defendant turned onto another street and drove away.

Luis went to his godparents' home in Oakland for a Christmas party in 2016. S.F. was living there at the time and was at the party. While Luis was outside the house in his car, defendant came to the house in his car and challenged Luis to fight. S.F. stayed inside while defendant was challenging Luis to fight, and defendant left. Luis could not remember if defendant had a gun on that occasion.

On the day of the attempted murder, Luis went to San Francisco with M.R. After leaving San Francisco, they went to Luis's home in Oakland so that he could charge his phone. Luis then drove a couple of blocks to take

M.R. home. While Luis was there, he noticed S.F., her sister, and a man outside of his godparents' home, but did not speak to them. Luis drove home and didn't notice anything unusual. He parked across the street, went into his house to get his phone, and came back out to his car to call his girlfriend. As he was sitting in the car, he saw another car drive up and park in front of him, and defendant got out of the passenger side. Defendant was facing the car he got out of, and his mouth was moving as if he was talking, but Luis had his windows rolled up and could not hear what defendant was saying. Defendant got back into the car and it left. About five minutes later, the same car returned and parked behind Luis with one car in between them. Luis saw defendant in the passenger's seat through his rear-view mirror. Defendant was talking. The car stayed there for a few minutes, and Luis decided to start his car because he was afraid defendant was about to do something bad. Before Luis could start his car, the other car pulled alongside, and defendant shot Luis. Defendant fired at least eight times before his car left the scene. One bullet hit Luis, traveling through his left armpit, through his lung, and severing his spinal cord between his cervical and thoracic vertebrae. As a result, Luis lost all sensation below his nipples. He no longer has use of his legs, has only partial use of one arm, requires a catheter, and feels constant pain throughout almost his entire body. Medical personnel concluded that his injuries were not reversible.

Police arrived at the scene of the shooting. Officer Elvis Mora spoke to Luis in Spanish. Officer Mora is certified by the Oakland Police Department as fluent in Spanish. Their conversation was recorded on a body-worn camera and played for the jury. Officer Mora asked Luis who shot him. His response was inaudible on the recording, but Officer Mora testified that Luis said, "Nelson," and on the recording Officer Mora immediately repeated,

4

"Nelson?" Luis told Officer Mora that "Nelson" was 20 years old and Latino, and he described the car as black. He did not give any other identifying information about "Nelson," such as height or weight. In later interviews with law enforcement, Luis gave inconsistent statements about whether he had been able to see the face of the shooter. Luis identified defendant as "Nelson" at trial.

After the shooting, defendant called his cousin's girlfriend, Kimberly M. He told her that he had done something bad but could not tell her about it on the phone. They exchanged text messages, introduced at trial, in which defendant told Kimberly that he " 'did some shit' " and that he " 'fucked somebody up.' " The text exchange occurred in Spanish. Kimberly testified that she was fluent in both English and Spanish. She learned Spanish as her first language and had spoken English for 25 years at the time of her testimony. Over defendant's objection, Kimberly translated the text exchange for the jury without the assistance of a court-certified interpreter.

The jury deliberated over two days. They requested readback of Kimberly's testimony and questioned the definitions of the words "careful" and "deliberate" in the allegation of premeditation and deliberation (§ 664, subd. (a)). They found defendant guilty of attempted murder (count one) and shooting at an occupied motor vehicle (count two). However, the jury was unable to reach a verdict on the allegation that the attempted murder was committed with premeditation and deliberation. The trial court declared a mistrial on that allegation, and the district attorney dismissed it. With regard to both counts, the jury also found the following special allegations true: personal infliction of great bodily injury (§ 12022.7, subd. (a)), personal infliction of paralysis (*id.*, subd. (b)), and personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)). With regard

5

to count one, the jury also found true personal use of a firearm (§ 12022.53, subd. (b)), and personal and intentional discharge of a firearm (*id.*, subd. (c)).

The trial court conducted a sentencing hearing in January 2024. The court imposed a middle term sentence of seven years on count one and a consecutive indeterminate 25-year-to-life sentence on the allegation of personal and intentional discharge of a firearm causing great bodily injury (§ 12022.53, subd. (d)), for an aggregate term of 32 years to life in prison. The trial court imposed and stayed a five-year middle term sentence with respect to count two pursuant to section 654. All other enhancements were also imposed and stayed under section 654. The court awarded undisputed presentence credits of 2,516 actual days and 377 good time/work time credits for a total of 2,893 days. It reserved determination of actual restitution, imposed a $10,000 restitution fund fine pursuant to section 1202.4, subdivision (b), and stayed a $10,000 parole revocation fine pursuant to section 1202.45 pending successful completion of parole. The court ordered payment of a $40 court operations assessment pursuant to section 1465.8 and a $30 criminal conviction assessment pursuant to Government Code section 70373. Defendant filed a timely notice of appeal.

## DISCUSSION

As discussed above, defendant appeals from the trial court's January 2024 sentencing order made after a jury found him guilty of, among other things, the attempted murder of Luis and personally inflicting great bodily injury by discharging a firearm. We appointed counsel to represent defendant on appeal. After examining the record, counsel filed a *Wende* brief raising no issues and requesting that we independently review the record. (*Wende, supra,* 25 Cal.3d at p. 441; see also *People v. Kelly* (2006) 40 Cal.4th 106, 109–110.) Defendant was advised by his attorney of the opportunity to

6

file a supplemental brief with this court. He subsequently filed a letter brief, which was rejected because it was written in Spanish. (See Code Civ. Proc., § 185, subd. (a) ["Every written proceeding in a court of justice in this state shall be in the English language"].) Defendant has not filed anything further in this proceeding.

We have examined the entire record and are satisfied that defendant's attorney has generally complied with her responsibilities and that no arguable issue exists. In particular, we see no abuse of discretion in the trial court's sentencing in this case. (See *People v. Catalan* (2014) 228 Cal.App.4th 173, 179 [trial court "enjoys broad discretion" in matters involving sentencing]; *People v. Braxton* (2004) 34 Cal.4th 798, 814 [the "trial court is presumed to know the governing law"].)

## DISPOSITION

The judgment is affirmed.

HILL, J.*

WE CONCUR:

BANKE, ACTING P. J.

LANGHORNE WILSON, J.

A169824
*People v. Carrillo Gomez*

---

* Judge of the San Mateo County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.